In re Daniel WOLF, Helen
Wolf, Debtors.

Bankruptcy No. 85–00121D.

United States Bankruptcy Court,
N.D. Iowa.

July 9, 1986.

R. Fred Dumbaugh, Cedar Rapids, Iowa,
for debtors.

John Titler, Lynch, Dallas, Smith & Har-
man, John Monroe, Cedar Rapids, Iowa, for
Federal Land Bank of Omaha.

Richard Phillip, Decorah, Iowa, for Na-
tional Bank.

Thomas Pefer, Shuttleworth & Ingersoll,
Cedar Rapids, Iowa, for LeaseAmerica
Corp.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge, sitting by designation.

The debtors in this case filed a Chapter 11 reorganization petition with this court on January 18, 1985. They maintain a cattle and hog operation and have continued the same during the course of these Chapter 11 proceedings.

The debtors filed their plan on July 17, 1985 and amended the same on November 22, 1985 after various hearings before the court. The court on January 13, 1986 entered its order approving the debtors disclosure statement and authorized the plan to be submitted to creditors for vote of acceptance or rejection.

On February 28, 1986 a confirmation hearing was held before the court at which the debtors established that the plan had been accepted by the requisite number and amount of their unsecured class of creditors and by all secured creditor classes with the exception of the Dyersville National Bank (hereinafter "Bank") and the Federal Land Bank of Omaha (hereinafter "FLB") who also filed objections to confirmation of the plan.

Considerable testimony and documentary evidence were received at the confirmation hearing and post-hearing memoranda were submitted by the parties. Having reviewed the record and the aforesaid memoranda the court now sets forth its findings and conclusions leading to its determination that the plan of reorganization in this case should be confirmed. The issues raised by the objections are: (1) Does the plan meet the feasibility requirements under § 1129(a)(11) of the Bankruptcy Code; and (2) Does the treatment accorded to the Bank and FLB under the plan accord those secured creditors fair and equitable treatment under § 1129(b)(1) and (2) of the Code sufficient to permit confirmation of the plan notwithstanding a lack of acceptance by those creditors.

## FEASIBILITY REQUIREMENT

■ The primary issue under the § 1129(a)(11) objection is whether this court can find that confirmation of the plan is "not likely to be followed by the liquidation, or the need for further financial reorganization" of the debtor following confirmation. In this regard, it has been held that the projections submitted by a debtor in reorganization need not be viewed as an "exact science" and that ultimate success of the projected future operation "need not be guaranteed." *In re Monnier Bros.*, 755 F.2d 1336, 1341–42 (8th Cir.1985); *In re Fursman Ranch*, 38 B.R. 907, 912 (Bankr.W.D.Mo.1984). The evidence in the present case, on balance, and by the preponderance of the same, establishes a reasonable likelihood that the debtor will in fact be able to perform its obligations under the plan as projected.

The chief issue in this regard is the differential between the debtors' projected finishing of 1,600 head of hogs in 1986 and 1987 as compared to an actual level of just over 1,200 head in 1985. The Bank and FLB argue that there is no reasonable support for this projected increase in the absence of substantial new infusion of capital investment in the debtors' operation. However, the debtors testified in credible fashion to a number of contingencies and factors that obtained in 1985 that will be corrected or overcome in the current and succeeding years to achieve a higher production level. Some of this testimony is summarized accurately in pages 6 and 7 of the debtor's post-hearing brief and said summary is incorporated herein by reference. Against this credible testimony the objecting creditors could offer only general conclusionary commentary to the effect that their witnesses did not believe it could be done.[1]

1. During the course of the confirmation hearing the court reserved ruling on the admissibility of the Creditors' Exhibit No. 2 comprising worksheets of income and expense from actual and projected operations for 1983 through 1987 as prepared by a creditor witness. On reviewing the record and the memoranda submitted by counsel, and noting various discrepancies between actual data and the figures used in this Exhibit, together with additional questionable

The feasibility of the debtor's projections is also corroborated by the debtor's performance during the proceedings in this court. Contrary to the case of many farmer debtors undergoing Chapter 11 proceedings in this district, the debtors in this case have expeditiously presented and submitted for confirmation their plan of reorganization. They have also during the course of these proceedings maintained debt service payments in excess of $53,-000.00 from their operations. While their projected level of increased production will certainly require considerable hard work and effort to achieve, I am satisfied on the basis of the testimony and evidence received that these debtors will in fact make that effort and that they should be able to reach the projected results. The court therefore can not find that it is "likely" that confirmation of this plan will be followed by a subsequent liquidation within the meaning of § 1129(a)(11) of the Bankruptcy Code.

## "FAIR AND EQUITABLE" TEST

With regard to the fair and equitable test under § 1129(b)(1), (2) of the Code, the key issue is the setting of an appropriate interest rate on the payout to the secured creditors to assure that the deferred cash payments have a present value, as of the effective date of the plan, at least equal to the value of the creditors' interest in their collateral. The debtors offered expert witness testimony from a witness familiar with "rates of return" in various types of financing transactions. He has testified before various regulatory commissions and agencies. He testified in this court to a methodology looking to the "lost opportunity costs" in terms of what kind of return each creditor would receive by putting cash equal to the value of their lien into investments having comparable risks and a similar period of time.

The witness then compared the present debt obligation to medium grade bonds having a "Baa" or "BBB" rating. Under nationally recognized rating agency evaluations, the evidence indicates that under present circumstances the appropriate interest rate for such obligations would range from 10.5 percent to 11.2 percent. The witness also indicated the low end of that range would be most appropriate in terms of the present trend downward in such interest rates.

 Against this evidence, the creditors offered testimony of bank officials stating that they would make no loans at 100 percent of value in the first place, and that in any event their going interest rates ranged from 12.75 percent to 13.25 percent. I believe the reference to the "100 percent loan" by the creditors is inappropriate in the present context of dealing with an *existing* loan. The rest of the creditors' evidence, in effect insisting upon *its* current contract rates on other loans, is likewise off the mark. For one thing, there is no showing that the risks and terms of those other loans are in fact comparable to the present situation. Secondly, I do not believe that "creditor specific" interest rates are mandated by the "fair and equitable" concept embodied by § 1129(b)(1) and (2) of the Code. Otherwise a creditor who exacts exorbitant interest rates would automatically be guaranteed the same rates in Chapter 11 reorganization. The irony of such a result under a "fair and equitable" standard is apparent.

 On balance, I conclude that an interest rate of 11 percent is appropriate and will accord the objecting creditors fair and equitable treatment within the meaning and spirit of § 1129(b)(1) and (2) of the Bankruptcy Code. The Court of Appeals for the Eighth Circuit has indicated flexibility in devising appropriate standards for

assumptions as to expenses in projected operations implied by the witness, the court now determines that the objection to this Exhibit should be sustained and the Exhibit not received into evidence. A proper foundation for its receipt in evidence was not established, in my opinion, and in any event the Exhibit would be excludable under Rule 403 of the Federal Rules of Evidence. Even if relevant its probative value is substantially outweighed by the danger of unfair prejudice and confusion that would result from its admission into evidence.

farmer reorganization cases and I believe that the novel expert testimony offered by the debtors in this case, on interest rates, is convincing and establishes an appropriate range of such rates for present purposes. See *In re Monnier Bros.*, 755 F.2d 1336, 1339, 1342 (8th Cir.1985); *In re Ahlers*, 794 F.2d 388 (8th Cir.1986). The debtor has agreed to amend the plan to include the interest rate determined to be appropriate by this court.

Accordingly, pursuant to the foregoing findings and conclusions, the court rules that both objections to the confirmation of the debtor's plan of reorganization are overruled and the debtor may submit for entry the usual form of confirming order used in this district provided the adjustment of interest rate referred to above is incorporated in the same. Such confirming order should be submitted to the regularly sitting bankruptcy judge in this district.